Du Bois Cemetery Co., Appellant, *v.* Griffin, burgess, et al.

*Streets—Alley—Dedication—Evidence.*

Evidence of the dedication of an alley to public use is sufficient, where it appears that the owner of the land opened the alley, and declared that he had no further control of it, and applied to the borough authorities to put and keep it in order.

*Alleys—Acceptance of dedication—Evidence.*

Expenditure of public money upon an alley is evidence of the acceptance of the dedication of the alley to public use.

*Cemetery companies—Closing alley—Act of April 5, 1849.*

Under the act of April 5, 1849, P. L. 397, which forbids the opening of streets through cemeteries, a cemetery company has no right to close an alley already opened because it has purchased ground on both sides of it.

Argued April 17, 1894. Appeal, No. 457, Jan. T., 1893, by plaintiff, from decree of C. P. Clearfield Co., Feb. T., 1892, No. 2, on bill in equity. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and FELL, JJ. Affirmed.

Bill to restrain borough from re-opening alley.

The bill is not printed in the paper-books, but is summarized in the following opinion by KREBS, P. J.:

"The bill of complaint in this case charges in substance as follows:

"1. That the plaintiff is a corporation created under the laws of Pennsylvania.

"2. That it acquired title to certain premises set out in bill by metes and bounds.

" 3. That the tract or parcel of land described in paragraph two of the bill was regularly laid out into cemetery lots, with passageways between according to a general plan.

" 4. That the burgess and town council of Du Bois borough passed an ordinance which provided for the laying out of and ordaining Cemetery Alley.

" That the alley ordained and laid out passes through the cemetery above mentioned, cutting it into two pieces, and appropriates a tier of burial lots and interferes with the general plan thereof.

" 6. That the alley was laid out without any legal authority, and if opened will cause great and irreparable injury to the complainant, and praying that an injunction issue to restrain the defendants.

" Upon the presentation of the bill a preliminary injunction was issued and the case sent to an examiner and master, D. S. Herron, Esq., with power to report the facts and a decree appropriate thereto. To the report of the master numerous exceptions were filed both as to his findings as well as to his conclusions of law. In the manner in which the master has stated the facts he did find, in order to examine the report with the exceptions, it becomes necessary to restate the whole facts, so that the case may be passed upon with the facts set forth in the order in which they transpired, and a clean and succinct history be gathered to which the principles of law applicable thereto may be applied.

" THE FACTS.

" 1. In July, 1872, and for some years prior thereto, John Rumbarger was the owner of a tract of land then situate where the borough of Du Bois is now in part located. This tract contained 175 acres, more or less, and upon the incorporation of Du Bois as a borough was in whole, or the larger part thereof, included within the borough limits.

" 2. On the      day of July, 1872, John Rumbarger had surveyed and plotted a large number of lots, and made and established a plan of a village with streets and alleys; amongst other streets thereon laid out, are Main and State streets, but the plot or plan then made and found entered in Deed Book No. 24, page 449, does not embrace the locus of the dispute in this proceeding.

"3. In June, 1877, John Rumbarger laid out an additional portion of the premises mentioned in the bill into burial lots and for cemetery purposes.    This cemetery plot was bounded along its entire eastern side by what is called Main street, or what is a prolongation of Main street, then in the towns of Rumbarger and Du Bois ; and on the three remaining sides by other lands of 'Rumbarger, part of the first mentioned premises ; and at some time (whether before or after the plotting of this burial ground does not appear from the testimony) Mr. Rumbarger subdivided the remaining portion of the premises first above mentioned into lots and blocks, and he or his heirs or executors have had conveyances made in conformity with a regular plan. Whether it was done by actual survey or simply plotted upon paper does not appear.    But the fact does sufficiently appear that, before and since the death of Mr. Rumbarger, sales have been made upon a systematic plan of some kind along Main street and the eastern and northern side of this cemetery property.

"4. On May 25, 1880, John Rumbarger conveyed by deed to W. N. Prothero (the deed is not recorded but recited in a later one) a lot or piece of ground situate in that part of his property not covered by the original plot or plan, entered in Deed Book No. 24, page 449, as aforesaid.    And W. N. Prothero and wife, by their deed dated March 28, 1881, recorded in Deed Book 19, page 326, conveyed the same to Henry Prothero.    The description is as follows, viz : Beginning at a post on Main street and at lot of H. Fireman ; thence in line of Main street south 27½ degrees west 11 rods to a post at cemetery lot ; thence by line of cemetery lot north 51 degrees west 16 rods to post in line of John Rumbarger ; thence by line of John Rumbarger north 27½ degrees east 9 rods to post at Fireman's lot ; thence by Fireman's lot south —— degrees east 16 rods to post at Main street, and place of beginning, containing one acre.

"5. Du Bois borough was incorporated on Jan. 11, 1881, the charter and proceedings being recorded in the office for the recording of deeds in Clearfield county, Pa., in Miscellaneous Book E, page 207, but no plot or plan is attached thereto by which any streets or alleys are designated or set out, but it includes all of the above mentioned premises of John Rumbarger, with lands of John Du Bois.

" 6. Some time after the plotting of the original cemetery lot by Rumbarger, in 1877, and prior to 1883, (the time does not definitely appear from the testimony, so far as we can discover,) Mr. Rumbarger added to the burial plot on the northern end, and this work seems to have been done by J. L. Vosburg, C. E., leaving the cemetery, aside from what has been added by the vendors of the complainant, known as the Prothero lot on Main street, about the same as it has been at any time since the plot surveyed by Vosburg was added; except as affected by the alleged dedication by Rumbarger of the alley in dispute, off the northern side.

" 7. In 1880, and down to sometime as late as 1881 or 1882, the cemetery ground was separated from the lot known as the Prothero lot, and the other lands of John Rumbarger, by an old rail fence, and this fence was the line of the lot known as the cemetery lot proper, on the northern side, and extended north to State street, or beyond, as far as the first cemetery plot extended at that time.

" [8. In the year 1881 or 1882, John Rumbarger, Sr., while the owner, went upon the ground and built a picket fence twenty-five feet, more or less, distant from the old fence and inside of the cemetery plot, in effect cutting out the tier of lots, beginning at Main street and running north from and including lots Nos. 14 to 35 inclusive, or as far as the original cemetery plot.] [1]

" 9. A short time prior to July 25, 1883, John Rumbarger contracted to sell and convey to one Patrick Reynolds a lot containing three acres of ground and did on that date execute a deed therefor, which describes the ground sold as follows, viz: Beginning at a post corner of State and Spring street; thence along State street south $22\frac{1}{2}$ degrees west $305\frac{1}{2}$ feet to a post 25 feet northeast of cemetery fence; thence by a line parallel to cemetery fence north $48\frac{3}{4}$ degrees west 493 feet to a post; thence north $27\frac{1}{2}$ degrees east $37\frac{1}{2}$ feet to post at Spring street; thence along Spring street south $62\frac{1}{2}$ degrees west 481 feet to State street and place of beginning. Containing three acres. With this deed, a draft was also delivered.

" 10. Some time between the 28th of March, 1881, when W. N. Prothero sold to Henry Prothero the premises described in paragraph 5, and the 25th of July, 1883, when Rumbarger

conveyed to Reynolds as described in paragraph 9, State street had been prolonged westward until it reached the cemetery plot, and Spring street was also laid out, or plotted, but not opened, on the north side of the Reynolds lot, and running nearly at right angles to State street.

" [11. A short time prior to July 25, 1883, and when there to sell the Reynolds' lot, Mr. Rumbarger, in company with a surveyor and Mr. Reynolds, pointed out the alley in controversy, and the draft furnished by Rumbarger to Reynolds of his purchase, has it laid down thereon opposite the Reynolds' property as far south as State street, and it was at that time open and fenced on both sides between State street and Main street, the point in dispute ; the alley was opened and used to some extent at least between the cemetery on one side and the Prothero lot on the other from Main street northward.] [2]

" [12. At the request of John Rumbarger, the borough council directed the street commissioner to do work upon this alley. There was a small amount of work done along this alley between Main street and State street at different times by the borough authorities, and there was an acceptance so far as acceptance can be made by the authorities, other than by an ordinance, of this alley as one of the alleys of the borough of Du Bois. This fact is found by the preponderance of the testimony in the case before the master. The witnesses are not contradicted by any direct evidence, only that which is negative, their reputation is not assailed and so far as we know them they are reputable men.] [3]

"13. The deed from W. E. Rumbarger's executors to J. A. Terpe, G. E. Grier and George Weber, calls for an alley on the northern side of the cemetery plot, between Main street and State street, over the ground in dispute, and the description is as follows, viz: Beginning at a post, corner of land of J. J. Daily on Main street; thence along Main street north $43\frac{1}{4}$ degrees east 393 feet to an alley ; thence along said alley north $47\frac{3}{4}$ degrees west 812 feet to post at another alley ; thence along said alley south $48\frac{1}{4}$ degrees west 403 feet to post at land of J. J. Daily ; thence along land of said Daily to post on Main street and beginning. Containing 7 and 56-100 acres.

" [14. The deed of Henry Prothero to J. A. Terpe, G. E. Grier and George Weber, which is for the following premises,

viz: Beginning at a post on Main street and at lot of M. Moore (formerly Fireman's); thence in line of Main street south 27½ degrees west 11 rods to post at cemetery lot; thence by line of cemetery lot north 51 degrees west 16 rods to post at State street (formerly John Rumbarger's land, vide paragraph 5); thence by State street and land of Patrick Reynolds, (formerly land of John Rumbarger, supra 5), north 27½ degrees east 9 rods to post at M. Moore's (formerly Fireman's) thence by M. Moore lot (formerly Fireman), south      degrees east 16 rods to post at Main street and place of beginning, containing one acre, does not cover the 25 feet between the line as fixed by deed of W. N. Prothero to Henry Prothero, and the picket fence. The call in the deed for post at cemetery lot, is identically the same as in the deed mentioned in paragraph 5, and is intended for the line of the cemetery as it then was before John Rumbarger moved the picket fence back twenty-five feet to open the alley. This is clearly made to appear by reference to the deeds and the testimony of J. L. Vosburg, and that part of the examination of Robert Davie, relating to the staking done in 1885. He says, 'when we drove those stakes over in the alley we drove them down to keep the line,' and when it is remembered that they only drove eight stakes along there, it becomes manifest that those stakes were driven to preserve the territory line between Rumbarger and Prothero as then existing, and along the northern side of the twenty-five foot alley, and not the corners and lines of the cemetery lots; and the call in the deed is but a repetition of the old call in the former deed, and could never have been intended to go beyond the old cemetery line as it existed before the alley was opened.

" [15. The distances and courses in the deed from Henry Prothero to Terpe, Grier and Weber, are the same as in the deed from W. N. Prothero to Henry Prothero, and the deed from W. N. Prothero to Henry Prothero did not include the 25 feet of space that lay between the old rail fence and the picket fence erected in 1882 by John Rumbarger.] [4]

"16. An ordinance was adopted by the town council of Du Bois borough as follows, viz:

"'Laying out and ordaining an alley in the first ward of the borough of Du Bois.

" ' Section 1. Be it ordained by the burgess and town council of the borough of Du Bois, and it is hereby ordained by authority of the same, that a public alley to be known as Cemetery alley is hereby ordained and laid out as follows: Beginning at a post on west side of Main street at a point four feet from the corner of the original cemetery plot; thence 46 degrees, 45 minutes west to the line of State street; thence from a point on the west line of State street directly opposite from the point of intersection aforesaid, north 46 degrees 45 minutes west to a point four feet distant from the northeast corner of the original plot of said Rumbarger cemetery; thence from a point in lot No. 33, as per said plot, twenty-four feet distant from the terminus of the last mentioned line south 46 degrees 45 minutes east, and at all points twenty-four feet distant from the aforesaid line to a post at Main street, 24 feet southwest from place of beginning.

" ' In witness whereof, the said town council have caused the same to be signed by the burgess, attested by the clerk and the seal of the borough to be affixed thereto this 19th day of February, A. D. 1892.'

" 17. This ordinance covers four feet of ground that is within the lines and boundaries of the deed from Henry Prothero to J. A. Terpe and George Weber, and by them conveyed to the Cemetery Company.

" 18. J. A. Terpe, G. E. Grier and George Weber obtained title as aforesaid (from John Rumbarger's executor) to the cemetery plot, containing $7\frac{56}{100}$ acres, by deed dated April 26, 1890, recorded in Deed Book 56, page 358, and also obtained title to the Henry Prothero lot, containing one acre, by deed dated May 15, 1890, recorded in Deed Book No. 60, page 57.

" 19. A charter under the corporation act of 1874 for a corporation of the second class, or for profit, was obtained by J. A. Terpe, G. E. Grier, Geo. Weber, J. E. Grier, Jr., and A. L. Cole, on July 7, 1890. · The whole number of shares of stock is fifty, and J. E. Grier, Jr., and A. L. Cole in the articles of association subscribed for one share each and Terpe, Grier and Weber subscribed for sixteen shares each. The name of the corporation is ' The Du Bois Cemetery Company.' The purposes of the corporation are set out as follows, viz : ' 2. Said corporation is formed for the purpose of " buying, improving and selling real estate." ' "

" 20. By deed dated Aug. 7, 1890, recorded in Book No. 58, page 383, Terpe, Grier and Weber conveyed to the Du Bois Cemetery Co. the following described premises, viz : Beginning at a point on Main street, at corner of Henry Fireman lot, (Prothero lot northeast corner) ; thence along Main street 589 feet 9 inches (being a southerly course) to lot of J. J. Daley ; thence along line of J. J. Daley 843 feet more or less, to lot of J. J. Ormiston ; thence to the line along line of Rumbarger cemetery 397 feet —— inches ; thence along P. Reynolds to State street; thence across State street to line of lot sold by John Rumbarger to W. N. Prothero by deed dated 25th May, 1880; thence north $25\frac{1}{2}$ degrees east $45\frac{7}{10}$ feet; thence north 39 degrees east $114\frac{1}{10}$ feet to line of Henry Fireman ; thence south $47\frac{5}{10}$ degrees east 264 feet to Main street and place of beginning.

" 21. Subsequent to the date of the conveyance, viz., Aug. 7, 1890, these persons, as the cemetery company, closed the alley, at that time being open, as included in the territory covered by the deed to the cemetery company, both at the Main street end and along the land sold by Rumbarger to Patrick Reynolds on July 25, 1883.

" [22. The tier of lots that were thrown out by the erection of the picket fence by Rumbarger in 1882, or thereabouts, running from Main street westerly, being, so far as it was then plotted, lots 14 to 35 inclusive, were on the outer edge of the plot. To cut them off did not then destroy the symmetry of the plot, nor shut up or affect in the least any driveway or footpath as planned in the general plot, nor would the opening of the alley, as contended for by the borough, affect the original cemetery plot. It is only by the subsequent purchase of the Prothero lot and its addition to the original cemetery that the alley is made in anywise to interfere with the present cemetery as now claimed by the Du Bois Cemetery Company.] [5]

" THE LAW.

" Three legal questions are involved in the consideration of this case. They may be stated as follows:

" (*a*) Did the acts done by John Rumbarger constitute a sufficient dedication of the alley in question to public use ?

" (*b*) Did the borough of Du Bois, acting through the municipal authorities, in any way accept the alley for public use ?

" (*c*) Could the complainant close it by the purchase of the Prothero lot and its annexation to the cemetery property for cemetery purpose, so as to prevent the borough authorities from re-opening the same ?

" 1st. It is a well settled principle of law that where, upon a sale of lots, reference is made to a map or plot upon which they are laid down and which calls for certain streets and alleys, this constitutes a dedication of these ways to the use of the purchasers as public ways, and the map or plan so referred to becomes a material and essential part of the conveyance, and is to have the same effect as though copied into the deed, and it is not material that the streets and alleys are not opened at the time : Ferguson's Appeal, 117 Pa. 426, 451, and the numerous cases cited by PAXSON, Justice.

When one sells and conveys lots according to a plan which shows them to be on streets, he must be held to have stamped upon them the character of public streets.   This is sufficient to prove a dedication of the street to public use : Pearl Street, 111 Pa. 565 ; Birmingham v. Anderson, 48 Pa. 253 ; 2 Dillon, Mun. Corp., 2d ed., 503 ; Baker v. Chester Gas Co., 73 Pa. 117.

" [Nor can any distinction be drawn between that of a street or alley.   It has been expressly ruled that when one, who is the proprietor of a portion of the town in which the lands lie, sells and conveys the lots according to a plan which shows them to be on a street or alley, it creates an implied covenant of the existence of the street or alley : Trutt v. Spotts, 87 Pa. 339 ; Transue v. Sell, 105 Pa. 604.] [6]

" It is doubtless true the dedication of a private alley to public use by the owners of the land, will not make it a public alley unless it is accepted as such by the municipal authorities : Beatty's Alley, 104 Pa. 622.

" The reason for this is given by PAXSON, J., in Commonwealth v. Moorehead, 118 Pa. 344, and it is ' because the owners of land in a township or borough cannot, for their own convenience, compel the municipality to accept a street or alley which is not demanded by the public.'   But if the municipality has once accepted it as one of the ways of the municipality it cannot after that be treated as a private way for the use of the vendor and his immediate vendees, but it is a public way open to all and all are alike affected by its existence as such.

" [It was practically conceded that this alley was dedicated by Mr. Rumbarger to the use of his vendee opposite the property of Patrick Reynolds, and northwest of State street, and it would have been futile to deny this fact in view of the plan or draft given by Mr. Rumbarger to Reynolds with his deed. But the great preponderance of all the affirmative evidence is that, at that time, he had opened the alley at the point in question as found in the items of facts.] [7]

" And if nothing had been done by the municipality in acceptance of this as one of the public ways of the borough, we might be confronted with a different question than the one before us.

" 2d. Did the municipality of Du Bois accept this alley so as to make it one of the public ways and affected with all the legal incidents of a public alley ?

" [Alleys are nothing more or less than highways of less width than streets, but for all practical purposes almost as important to the public enjoyment of property in a town or city as the streets.] [8]

· " [The facts found show that Mr. Rumbarger, after opening this alley, requested the town council, through one of the members thereof, to expend public money thereon, and that this request was favorably acted on by the council in a session held. From that time forward Mr. Rumbarger lost control over it as a private alley, and it was open to all the public. That no minutes of the town council are offered in evidence, and if it be conceded none were made, does not change the legal effect of their action. The authorities subsequently recognized their acceptance by other expenditures subsequently made thereon, and their supervision over it. What can that be but an acceptance ?] [9]

" [The distinction attempted by the learned counsel under the ruling of the court below and seemingly affirmed by the Supreme Court in Borough of Easton v. Rinek, 116 Pa., page 1, can only be taken to apply in questions relating to damages for the opening of streets and alleys. We think that is clearly shown in the opinion of GREEN, J., Opening of Brooklyn Street, 118 Pa. 640. The rule as to what constitutes dedication by the owner of the land and what is acceptance by the municipality is not affected by the ruling in Easton Borough v. Rinek, supra.] [10]

" [The entry upon a street or alley by the municipal authorities, by directing the proper official to expend of the public taxes and revenues thereon in order to put it in repair, is for all purposes, when done at the request of the owner of the land who originally opened it, a dedication by him to the public, and is also a binding acceptance thereof by the municipality for the use of the public: 2 Dillon, Mun. Corp., 2d ed. § 505.] [11]

"3d. Could the complainants, after the purchase of the Prothero lot, close the alley, and, by annexation of the Prothero lot to the main burial ground, deny the authority of the borough to re-open the alley?

" [The first section of the act of April 5, 1849, P. L. 397, sets forth as follows: 'It shall not be lawful to open any street, lane, alley or public road through any burial ground or cemetery within this commonwealth, any laws heretofore passed to the contrary notwithstanding; provided that this section shall not extend to the city and county of Philadelphia.' Under this statute the complainant claims that having succeeded in closing the alley, the court has no power to order it opened.] [12]

" CONCLUSIONS.

" Under the foregoing facts and law referred to, we conclude as follows :

" [1. That there was a dedication of a space of ground twenty-five feet, more or less, wide, extending from Main street to the western end of the cemetery plot, as including the addition plotted by Vosburg, and lying between the lands sold to Patrick Reynolds and the cemetery plot, west of State street, and between the Henry Prothero lot and the cemetery lot, between State street and Main street, to the use of the public by John Rumbarger.] [13]

" [2. That the borough council of Du Bois had accepted the same as one of the highways of the borough, and that it could not have been vacated except by legal proceedings only had to that end.] [14]

" [3. That the cemetery company could not, by the purchase of the Prothero lot, and annexing it to the cemetery, acquire the right to close the alley. That the alley, having been opened and dedicated to public use by Rumbarger, and accepted by the borough authorities, could not be closed by the cemetery com·

pany even if the description in the deeds to G. E. Grier, Geo,
Weber and J. A. Terpe covered the alley way in dispute. Much
more have they no right to close it, when these conveyances
do not cover the twenty-five feet set apart by Rumbarger.] [15]

" [The act of 1849, § 1, has no application to the present case.
That act was only intended to prevent the opening of ceme-
teries in use, and the desecration of ground in which the dead
were buried, and not to close an alley already opened by pur-
chasing ground on both sides of it, and then closing it without
any proceedings to vacate the same.] [16]

" 4. That so much of the ordinance of the borough council
of Feb. 19, 1891, as undertakes to cut off four feet from the
southern side of the Henry Prothero lot, and extending from
Main street to State street, is without due authority and there-
fore illegal. And while there is a remedy to the complainant
at law, having assumed jurisdiction for other purposes, we may,
and do, make a decree covering this point.

" And it is therefore decreed as follows, viz :

" [And now, Feb. 17, 1893, so far as the findings of fact
herein and conclusions of law do not agree with the learned
master's report, the exceptions to his report are sustained, and
it is ordered :

" 1st. It is adjudged, ordered and decreed that the burgess
and town council of Du Bois borough be, and are hereby en-
joined and restrained from entering upon the lot of ground be-
longing to the Du Bois Cemetery Company, and known as the
Henry Prothero lot, specifically bounded and described as fol-
lows, viz : Beginning at a post on Main street and at a lot
of H. Fireman (now M. Moore), thence in line of Main street,
south 27½ degrees west (11) eleven rods to post at cemetery
lot; thence by line of cemetery lot (this line being twenty-five
feet from picket fence) north 51 degrees west (16) sixteen
rods to post at State street; thence by State street and land
of Patrick Reynolds north 27½ degrees east (9) nine rods to
post at Fireman's (now M. Moore) ; thence by Fireman (now·
M. Moore) lot south      degrees east (16) sixteen rods to
post at Main street and place of beginning. And more partic-
ularly for the purpose of entering upon and taking four feet
from the southern side of said described premises in width,
and extending from Main street to State street, until such time

as the same shall be taken by due process of law had for that purpose.

" 2d. It is further adjudged, ordered and decreed that the preliminary injunction heretofore issued in this bill, be and is hereby dissolved, so far as the same has enjoined and restrained the said burgess and town council of Du Bois from re-opening the alley on the original location and width as laid out and opened, beginning at Main street and extending along the northern or northeastern side of the cemetery, and laid out by John Rumbarger across State street and between the lands of Patrick Reynolds and the said cemetery to the northwestern or western end of said cemetery.

" 3d. That the costs of this proceeding be paid by the complainants, and defendant, the borough of Du Bois, in equal proportions.]" [17]

*Errors assigned* were (1–17) portions of opinion and decree as above in brackets, quoting them respectively.

*Thomas H. Murray,* for appellant.—The master's findings should prevail: Bugbee's Ap., 110 Pa. 331; Hottenstein's Ap., 2 Grant, 301.

An intent on the part of the owner to dedicate is absolutely essential, and unless such intention can be found in the facts and circumstances of the particular case, no dedication exists: 2 Dil. Mun. Corp. 499; Griffin's Ap., 109 Pa. 150.

The dedication must be under such circumstances as to clearly indicate an abandonment of the soil by the owner exclusively to the public: Irwin v. Dixion, 9 How. 10; Com v. Newbury, 19 Mass. 57; Weiss v. Borough, 136 Pa. 294.

An alley does not necessarily involve public rights. It may, and frequently does, accrue to the benefit of those immediately bounding it. When this is its character it is, in its nature, private, and the general public have nothing to do with it and cannot seek its shelter to escape liability: Hall v. McCaughey, 51 Pa. 43; McCarty v. Kitchenman, 47 Pa. 239.

The calls in the Reynolds deed and draft do not establish an alley elsewhere. The rule that a call for a street as a boundary in another block is inoperative as an estoppel is not limited to damage cases: In re Twenty-ninth St.. 1 Hill, 189; Easton Boro. v. Rinek, 116 Pa. 1; Brooklyn St., 118 Pa. 640.

A street is in its nature a public highway. The term necessarily conveys that idea. An alley is a way of less public nature. The term does not, without more, indicate public use: Road from Fitzwater to Shippen Street, 4 S. & R. 106; McCarty v. Kitchenman, 47 Pa. 239; Hall v. McCaughey, 51 Pa. 43; Reed v. Erie, 79 Pa. 346; Pittsburg Alley, 104 Pa. 622.

The dedication to public use of a private alley by its owners will not make it a public highway, unless it is accepted as such by the municipal authorities: Pittsburg Alley, 104 Pa. 622; Maine v. Bradbury, 40 Me. 154; Durgin v. Lowell, 85 Mass. 398; Willoughby v. Jenks, 20 Wend. 96.

Land may be dedicated to the public for pious and charitable purposes as well as for ways common, etc: Hunter v. Trustees, 6 Hill, 407.

If a grantee's deed purports on its face to convey a good title and he has accepted it in good faith, he will be entitled to the benefits to be derived from an entry under color of title: 2 Sm. L. Cas. 710; Green v. Kellum, 23 Pa. 254.

Actual possession and such permanent use of the property as is consistent with its nature, will take away from the owner the constructive possession which the law attaches to the legal title, and put him to his remedy on his title: Young v. Herdic, 55 Pa. 172; Brewer v. Fleming, 51 Pa. 102; Lehman v. Kellerman, 65 Pa. 489; McGrew v. Foster, 113 Pa. 649; Boston Water Co. v. R. R., 33 Mass. 525; Manchester Cotton Mills v. Manchester, 25 Grattan, 828.

The act of April 5, 1849, P. L. 397, entitled " An act to prevent the opening of streets or public roads through burial grounds, and for the protection of cemeteries and grave-yards," is applicable here: Styer's Street, 2 Grant, 454. See also Hunter v. Trustees, 6 Hill, 407.

*David L. Krebs, Allison O. Smith* and *Geo. A. Lukehart* with him for, appellee.—There was a dedication of the alley to public use: 5 A. & E. Ency. L. 400; Schenley v. Com., 36 Pa. 62; McKee v. Perchment, 69 Pa. 342; Davis v. Sabita, 63 Pa. 90; McCall v. Davis, 56 Pa. 431.

The borough of Du Bois accepted the alley and acted upon the dedication of it to public use: 5 A. & E. Ency. L. 415; Com. v. Moorehead, 118 Pa. 344; Dil. Mun. Corp., 2d ed. 505.

Where the proprietor of grounds laid out for use as a public cemetery, makes a conveyance of a burial lot, no interest in the alleys which separate it from other lots, except the right of way, passes to the purchaser of a lot, unless particularly expressed in the deed: Seymour v. Page, 33 Conn. 64; Kincaid's Ap., 66 Pa. 411.

Plaintiff company has no standing to object to the re-opening of this alley.

OPINION BY MR. JUSTICE McCOLLUM, Jan. 7, 1895:

If John Rumbarger, in the exercise of his lawful right, laid out and opened on the strip of land in dispute a street or alley for public use, and the municipality accepted and maintained it for the use to which he dedicated it, no one will contend that he could thereafter exclude the public from it and appropriate it to a use destructive of or inconsistent with the dedication. What he could not do in this respect the appellant cannot do, because it has no greater right in the alley than he had after the dedication and acceptance: Its rights in the subject of this litigation are such as its grantors acquired by the deed of April 26, 1890, from Rumbarger's executor, and the deed of May 15, 1890, from Henry Prothero. These rights, by virtue of their deed of August 7, 1890, passed to the appellant, but as the grantors owned forty-eight fiftieths of the capital stock of the corporation, there is no room for a contention that the grantee has rights in the disputed territory which they did not have under the above mentioned deeds to them. The boundaries called for by the deed of April 26th and the deed of May 15th are in exact accord with the appellee's contention; the former calls for an alley on the northern side of the cemetery plot between Main street and State street, over the land in dispute, and the latter adopts the description in the deed of May 25, 1880, from Rumbarger to W. N. Prothero, who conveyed to Henry Prothero on the 28th of March, 1881. This description does not include any portion of the cemetery lot but it makes a line of that lot a boundary of the Prothero lot. This boundary is where the rail fence was when the deed was made to W. N. Prothero and is twenty-five feet from the picket fence afterwards built by Rumbarger. The strip of land between this boundary and the picket fence is not includ-

ed in Rumbarger's deed to Prothero or in his executor's deed to the appellant's grantors. These deeds, however, are consistent with the claim that it is a public street or alley. It seems to us therefore that the controlling questions are, whether there was a dedication of it to public use by Rumbarger and if so whether there was an acceptance of such dedication by the municipality. The learned court below, in an opinion manifestly founded upon a careful consideration of the testimony and the law applicable to it, answered these questions affirmatively.

In the findings and conclusions in reference to the dedication and acceptance of the alley the court disagreed with the master, and it is urged that the findings of the latter should prevail on the ground that he had better opportunity to judge of the credibility of the witnesses and the weight of the testimony than was allowed to the former. The disagreement between the court and the master on the fundamental question in the case was this: The master thought that the acts and declarations of Rumbarger, as related by the defendant's witnesses, were not sufficient to establish a dedication, while the court thought they were sufficient for that purpose and called for a finding that a dedication was made as claimed. It will thus be seen, that the disagreement related to the effect of the acts and declarations and did not involve the question whether the acts were performed and the declarations were made as alleged. We think it will be conceded that the court was quite as competent to pass upon their effect as the master was.

The next disagreement we note between the court and master on an important question in the case relates to the alleged acceptance of the alley by the municipality. The master thought " the weight of the evidence " showed that there was no acceptance, while the court thought the acceptance of it was established " by the preponderance of the testimony in the case before the master." We have carefully examined and considered all the evidence affecting these disagreements and are convinced that the findings of the court in reference to the dedication of the alley by Rumbarger and the acceptance of it by the municipality are warranted and sustained by the decided preponderance of it. We do not deem it necessary to embody the evidence or any part of it in this opinion. It consists of the

declarations of Rumbarger showing his purpose to establish on the land now in dispute a street or alley for public use, of his acts in execution of his purpose and of the acts of the municipal authorities evincing their acceptance of the alley for the use to which he dedicated it.   That Rumbarger opened an alley upon the land in dispute, at least seven years before his executor conveyed the cemetery property to the appellant, appears to be conceded, and the principal contention of the latter in reference to it is that he opened it for his own convenience or for the convenience of the persons to whom he might sell lots adjoining it, and not for public use.   But this contention is sufficiently answered, we think, by his declarations from time to time, showing his purpose in establishing it, and by his applications to the borough authorities to put and keep it in order.   It is manifest, from what he said and did, that after it was opened he considered he had no further control of it, and that the duty of maintaining it was on the borough.   The work upon it from that time until it was closed by the appellant was done by the borough and this is sufficient evidence of an acceptance of it by the latter as a public alley or street.

For the reasons stated by the learned judge of the court below we concur in his conclusion that Rumbarger's dedication of the alley to public use was not an abridgment of or interference with the rights of the parties to whom he had sold lots in the cemetery, nor in violation of the act of April 5, 1849, which declares that " it shall not be lawful to open any street, lane, alley or public road through any burial ground or cemetery within this commonwealth."

In accordance with the views we have expressed we overrule the specifications of error and hold that the appellant cannot close the alley, dedicated and accepted as aforesaid, against the appellees or the public.

Decree affirmed and appeal dismissed at the cost of the appellants.